IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DOREEN E. BRUNSON,                )
                                  )
         Plaintiff,               )
                                  )
vs.                               )   Case No. 11-cv-505-TLW
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of the Social Security )
Administration,                   )
                                  )
         Defendant.               )

## OPINION AND ORDER

Doreen E. Brunson ("plaintiff") requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 10). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that plaintiff was not disabled. On appeal, plaintiff asserts the ALJ failed to: (1) properly consider the opinion of a treating physician; (2) carry out his duty to re-contact the treating physician; (3) conduct a proper credibility analysis; and (4) properly evaluate the plaintiff's obesity as required by the regulations. (Dkt. # 14 at 5, 7, 8, 9). For the reasons discussed below, this Court REMANDS the ALJ's decision as set forth below.

## Background

Plaintiff filed for disability on May 22, 2008. (R. 101). After denial, she filed a hearing request before an ALJ and was granted a hearing on November 16, 2009. (R. 70). At the hearing, plaintiff testified to a variety of conditions that leave her unable to work. The conditions include pain from fibromyalgia, arthritis, irritable bowel syndrome (IBS), fatigue, and glaucoma. (R. 31, 114). Plaintiff's daily activities include some household chores such as sweeping, preparing meals, cleaning dishes, and getting her grandchildren ready for school or daycare. (R. 16, 134). She takes naps two to three times each day. (R. 37, 134). Other regular weekly activities include attending church, food shopping, laundry with grandchildren, and driving her husband to and from work. (R. 16, 35-36). Plaintiff also testified to difficulty sleeping, claiming she does not sleep for more than 2-3 hours at a time. (R. 34).

After conducting the hearing and reviewing the evidence, the ALJ concluded that the plaintiff was not disabled and denied benefits. (R. 21). The Appeals Council denied plaintiff's request for review. (R. 1). On August 16, 2011, plaintiff timely filed the subject action with this Court. (Dkt. # 1).

## Decision of the Administrative Law Judge

The ALJ determined, at step four, that plaintiff had the residual functional capacity (RFC) to return to her past relevant work[1] and was therefore not disabled. (R. 13-14; 21). At step two, the ALJ found plaintiff to have the severe impairments of osteoarthritis, hypertension,

---

[1] The five-step sequence provides that the plaintiff (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-752).

fibromyalgia, irritable bowel syndrome, and obesity. (R. 14). At step three, no impairment or combination of impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

After considering all symptoms and the extent to which these symptoms were reasonably consistent with the objective medical evidence, the ALJ then found the plaintiff to have the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a). (R. 15-21). The ALJ concluded plaintiff was not disabled because she was able to work at the sedentary level at the time she was laid off and "nothing shows that her condition has significantly worsened since then." (R. 20).

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a Claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

A plaintiff is disabled under the Act only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. See 42 U.S.C. § 423(d)(2)(A). A disability is a physical or

mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908.

The role of this Court in reviewing a decision by the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## Background

Plaintiff was born August 3, 1954 and was 55 years old at the time of the hearing before the ALJ on November 16, 2009. (R. 29). Plaintiff is 5'4" tall and weighs 203 pounds. (R. 113). Plaintiff graduated high school and completed some college. (R. 30). Plaintiff is married and lives with her husband, her oldest son, his future wife, and two grandchildren. Id. Plaintiff

4

testified she has no income and that they rely on her husband's paycheck. (R.30). Plaintiff's prior work history mainly consists of a customer service representative at call centers for various businesses including a hotel chain and a life insurance company. (R. 105-108). Plaintiff alleges a disability onset date of October 19, 2007 (R. 30, 101). Plaintiff initially stopped working because her company was shut down and everyone was laid off. (R. 32, 114).

## Discussion

On appeal, plaintiff asserts the ALJ failed to: (1) properly consider the opinion of a treating physician; (2) carry out his duty to re-contact the treating physician; (3) conduct a proper credibility analysis; and (4) properly evaluate the plaintiff's obesity as required by the regulations. (Dkt. # 14 at 5, 7, 8, 9)The court will address each of these issues in order below.

**Treating Physician Rule**

Plaintiff claims the ALJ improperly weighed Dr. Calvin's medical opinion and failed to adequately consider the factors provided in 20 C.F.R. § 404.1527 when evaluating Dr. Calvin's opinion. (R. 6-7). Plaintiff argues "the ALJ erred in his consideration of the opinion of Dr. Calvin," because plaintiff asserts that Dr. Calvin is her "treating physician, and a specialist." (Dkt. # 14 at 5). Dr. Calvin is a rheumatologist. (R. 20).

Plaintiff's argument fails for two reasons. First, Dr. Calvin does not meet the definition of a treating physician. "'The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and [her] maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003) (quoting Barker v. Shalala, 40 F.3d 789, 794 (6th Cir.1994)). "[T]he more times [a claimant is] seen by a treating source, the more weight" will be

given to the opinion of that source. 20 C.F.R. § 404.1527(d)(2)(i). Additionally, "a longstanding treatment relationship provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits." Id. at 762-763. The objective evidence in the record does not indicate a recurring relationship between plaintiff and Dr. Calvin. Dr. Calvin first saw plaintiff in January 2009 and the record shows the "New Patient Visit" box checked during that examination. (R. 264). Dr. Calvin's February 2009 "Ability to do Work" opinion was based on plaintiff's medical history and his exam. (R. 269). No other evidence in the record indicates another time plaintiff was seen or examined by Dr. Calvin. There is no substantial evidence to show Dr. Calvin meets the criteria of a treating physician.

Second, plaintiff's argument fails because an ALJ can determine how much weight to give each medical opinion. Even were Dr. Calvin qualified as a treating physician, the ALJ is allowed to give the treating physician's opinion less than controlling weight by applying six factors outlined in 20 C.F.R. § 404.1527: (i) length of treatment relationship and frequency of examination, (ii) the nature and extent of the treatment relationship, (iii) supportability, (iv) consistency, (v) specialization, and (vi) other factors. The ALJ can give the treating physician's opinion controlling weight if it "is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

The ALJ cites 20 C.F.R. § 404.1527 prior to reaching the conclusion that Dr. Calvin's opinion was entitled to "less than controlling weight." (R. 20). The ALJ compared the opinion given by Dr. Calvin with the additional medical evidence in the record and plaintiff's testimony and activities of daily living. (R. 17-19). While acknowledging Dr. Calvin's specialty, the ALJ concluded that Dr. Calvin's opinion was not adequately supported or consistent with the record

as a whole. Specifically, the ALJ cited four pieces of medical evidence inconsistent with the medical opinion given by Dr. Calvin. (R. 20).

Resolving conflicts in the medical evidence is a task allocated not to this Court but to the ALJ. See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988); Gay v. Sullivan, 986 F.2d 1335, 1341 (10th Cir. 1993) (the ALJ, not the court, weighs competing medical evidence). The ALJ gave great weight to the opinions of the consultative examiners and medical consultants of the State Disability Determination Services (DDS), because "the medical evidence and opinions are consistent with the residual functional capacity" and the experts "concluded the claimant can reasonably be expected to perform at the sedentary exertional level." (R. 21). Based on the record, the ALJ properly evaluated the evidence and properly evaluated the amount of weight given to Dr. Calvin's opinion

**Duty to Re-contact**

Plaintiff claims the ALJ had a duty to re-contact a treating physician before rejecting the opinion. (Dkt. # 14 at 7). "[I]t is not the rejection of the treating physician's opinion that triggers the duty to re-contact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (internal citations omitted). The ALJ makes no reference in his decision nor does he indicate he thought any of the medical records before him were inadequate. (R. 17-21).

The only reference to adequacy in the ALJ's opinion is in the context of the six-factor evaluation when determining how much weight to give Dr. Calvin's medical opinion. (R.20). The ALJ stated Dr. Calvin's opinion "is not adequately supported or consistent with the record as a whole." Id. He did not say Dr. Calvin's opinion was inadequate. "No regulation, ruling, or

court holding imposes a duty to re-contact a treating or other medical source simply because existing evidence is inadequate for a *favorable* determination." Oderbert v. Barnhart, 413 F. Supp. 2d 800, 805 (E.D. Tex. 2006). The duty to re-contact under 20 C.F.R. § 404.1512(e) is not triggered based on the ALJ's refusal to treat Dr. Calvin as a treating physician. Thus, the ALJ's decision in this respect is affirmed.

**Credibility**

"Credibility determinations are peculiarly the province of the finder of fact, and [this Court] will not upset such determinations when supported by substantial evidence." Kepler v.. Chater, 68 F.3d 387, 391 (10th Cir.1995) (quotation omitted). Yet, "[i]t is well-established that an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hardman v. Barnhart, 362 F.3d 676, 678-79 (10th Cir.2004) (quotation omitted). In the case at hand, the ALJ included an extensive analysis regarding the various factors considered by the ALJ in finding the claimant not entirely credible. (R. 19-20).

When evaluating plaintiff's allegations that her impairments impacted her ability to perform activities of daily living, the ALJ stated two factors which strongly weighed against finding the claimant entirely credible. First, the ALJ noted that the stated limited daily activities "cannot be objectively verified with any reasonable degree of certainty." (R. 19). The ALJ could not attribute the alleged daily limitations to the claimant's medical condition "as opposed to other reasons." Id. Particularly, the ALJ noted that plaintiff stated the she goes to church when "she feels like it," goes to the store "if needed," cooks dinner "if she feels up to it." Second, the ALJ noted that plaintiff's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Id. The ALJ then set forth a list of daily

8

activities as described by plaintiff in her testimony and in her medical records. In his opinion, the ALJ indicated those areas where the plaintiff's testimony was not supported by the objective medical evidence in the record.

When there is an allegation of disabling pain, the ALJ is bound by statute to look at the objective medical evidence to establish an impairment that "reasonably could be expected to produce the alleged pain," and must weigh statements regarding the intensity and persistence of the pain by the claimant "with the medical findings and signs." Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988) (citing Luna v. Bowen, 834 F.2d 161, 162–65 (10th Cir.1987); 42 U.S.C.A. § 423(d)(5)(A) (Supp.1988). In assessing the credibility of pain testimony, various factors are used. These factors include "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." Branum v. Barnhart, 385 F.3d 1268, 1273-74 (10th Cir.2004) (quotation omitted). "'[I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.'" Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting Luna, 834 F.2d at 164).

In finding plaintiff's allegations of disabling pain not entirely credible, the ALJ made two points. First, plaintiff did not stop working because of her alleged disability onset on October 19, 2007. She stopped working because she was laid off when the company she worked for closed. (R. 20). The ALJ concluded that "she was still able to work at the sedentary level at that time."

9

(R. 20). Second, nothing in the medical record indicated to the ALJ that plaintiff's "condition has significantly worsened since" losing her job in 2007. Id. The ALJ acknowledged plaintiff was likely experiencing pain, but he did not believe it was severe or totally disabling when compared with the total evidence in the record. (R. 19). See Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (the inability to work pain-free is not a sufficient reason to find a claimant disabled).

The ALJ next determined the medical care received by plaintiff was generally not "the type of medical treatment one would expect for a totally disabled individual, and . . . [was] essentially routine and conservative in nature." (R. 20). Plaintiff was prescribed Celebrex at 200mg and noted to Dr. Thomason in 2009 that it "seemed to help her." (R. 18). Additionally, there was no indication in the medical records to establish a "pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis." (R. 20). Finally, the ALJ noted the alleged side effects of the medications were not corroborated in the objective medical evidence. Id.

In sum, the record did not corroborate plaintiff's allegations of severe, disabling pain. "[A] formalistic factor-by-factor recitation of the evidence" is not required to support the necessary analysis. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ explained the objective medical evidence in great detail in assessing plaintiff's residual functional capacity, and those findings, which the ALJ referenced in the discussion of plaintiff's credibility, are sufficient to establish which evidence the ALJ accepted as true. The ALJ's credibility analysis is affirmed.

**Obesity**

Plaintiff claims the ALJ failed to evaluate her obesity as required by the regulations. (Pl. Br. 9). She indicates she has a Body Mass Index (BMI) of 34.3 and such BMI is classified as

obese. (Dkt. # 14 at 8). Plaintiff points to Social Security Ruling 02-01p, which states, "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting weight bearing joints may have more pain and limitations than might be expected from the arthritis alone." SSR 02-01p at P 7.

The Commissioner argues that the ALJ did consider plaintiff's obesity "despite the fact that Plaintiff made no allegation at her administrative hearing that her obesity caused any functional limitations." (Dkt. # 15 at 9). The Commissioner points out that the ALJ considered the examining and consultative reports that showed plaintiff's height, weight, and the fact she "was able to move all of her extremities well; ambulated with a stable gait, and could manipulate and grasp objects." Id. Thus, the Commissioner argues this Court should dismiss plaintiff's argument.

"While Social Security Rulings are not binding authority, they are nevertheless entitled to deference, unless plainly erroneous or inconsistent with the Social Security Act as the Rulings do represent the agency's interpretations of its own regulations and the statute which it administers." Harris v. Astrue, 2010 WL 715910 (D. Kan. Feb. 24, 2010) (citation omitted). The ALJ is required to comply with SSR 02-01p. DeWitt v. Astrue, 381 F. App'x 782, 785-86 (10th Cir. 201). The ALJ cannot "make assumptions about the severity of functional effects of obesity combined with other impairments." SSR 02-01p at P 7. This court cannot make post hoc rationalizations for the ALJ's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[D]istrict court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."). The ALJ must "evaluate each case based on the information in the case record." Id.

It should be noted that plaintiff's issue on appeal is not precluded by exhaustion requirements typical to other administrative agency proceedings. There is no requirement of issue exhaustion in the Social Security Act. <u>Sims v. Apfel</u>, 530 U.S. 103, 107-108 (2000) (stating issues exhaustion is a creature of statute and the Social Security Act does not require issue exhaustion before the ALJ or Appeals Council); <u>see</u> <u>also</u> <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005) ("The Supreme Court has ruled...that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates." (citing <u>Sims v. Apfel</u>, 530 U.S. at 120.)). Judicially created exhaustion is not applicable where the nature of the proceedings are non-adversarial. <u>Sims</u>, 530 U.S. at 120 ("The desirability of a judicially imposed issue-exhaustion requirement depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding. Where that proceeding is not adversarial, the reasons for a court to require issue exhaustion are much weaker than where the parties are expected to develop the issues themselves." (internal citations omitted)). The regulations make this nature of SSA proceedings quite clear. They expressly provide that the SSA "conduct[s] the administrative review process in an informal, nonadversary manner." 20 CFR § 404.900(b). <u>Sims</u>, 530 U.S. at 111.

On appeal, plaintiff "failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments." <u>Id.</u> Plaintiff did not include obesity as an impairment at her administrative hearing testimony. Nor did she list it as an impairment on her SSD application Disability Report or her Appeals Disability Reports. (R. 114, 146, 156). Plaintiff only mentions in her handwritten notes in her Function Report that she used to "be thin" and has "problems exercising to lose weight." (R. 141). There is only one mention of

obesity in the medical record, and it is an indirect reference at that. After Dr. Hopper's examination on August 25, 2008, he states the abdomen is "obese." (R. 227). All other medical evidence only indicates the height and weight of plaintiff with no additional assessment or impression by the medical examiners that plaintiff is obese.

Nonetheless, the ALJ listed obesity as one of plaintiff's severe impairments in his step two analysis. (R. 14). In the step three analysis, the ALJ determined that plaintiff did not have "an impairment or combination of impairments that [met] . . . one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" after "carefully compar[ing] the claimant's signs, symptoms, and laboratory findings." Id. The ALJ also stated he considered the entire record when finding plaintiff had a residual functional capacity (RFC) to perform a full range of sedentary work. (R. 15). When the ALJ states he considered all of the evidence, it is the practice in the Tenth Circuit to take the "lower tribunal at its word when it declares that is has considered a matter." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005)).

The Court notes that it sees no evidence in the medical records to support a finding of obesity as a severe impairment at step two. However, as noted earlier, the ALJ weighs the medical evidence and the ALJ is in a position to actually observe the plaintiff during the hearing and include these observations as part of his assessment. Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000) ("Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility."). However, in listing obesity as a severe impairment in step two, the ALJ apparently determined that plaintiff's obesity was significant enough to limit her "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Social Security

regulations require the ALJ to provide an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-01p at P 8. The ALJ included no additional discussion of obesity at any point in the rest of his opinion. Nor does the ALJ include any limitations in his RFC determination of sedentary work at step four, and he does not state whether he considered any limitations based on the severe impairment of obesity. (R. 15). The ALJ also did not include obesity as a limitation in his hypothetical to the Vocational Expert (VE); rather he only asked the VE whether "the kind of complaints the claimant has testified here to, . . . would eliminate all competitive work." (R. 44). Obesity was not "testified to" in the ALJ hearing and thus was not a part of the VE's hypothetical.

The ALJ is required to complete "a more detailed analysis of the claimant's impairments [at step four] than is required at step two." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Specifically, "the ALJ must specifically analyze the impact the impairments have on the claimant's ability to do the work [she] has previously done." Id. Here, the ALJ provided no information in his step four analysis as to how, if at all, or to what extent, if any, obesity would impact plaintiff's ability to return to her previous level of work. Nor did the ALJ provide any explanation as to why he listed obesity as a severe impairment under step two, in light of it not being raised as an impairment by plaintiff until the appeal.

Thus, remand is necessary so that the ALJ can provide an explanation as to why he listed obesity as a severe impairment under step two and how this impairment impacts, if at all, plaintiff's ability to perform her past work. Alternatively, if the identification of obesity as a severe impairment was a mistake, then the ALJ need only revise his decision.

## Conclusion

The ALJ's decision is affirmed in all respects, except as to his finding that plaintiff's weight constitutes a severe impairment. This case is remanded on this basis alone, and the ALJ is directed to identify the evidence in the record that supports his finding that plaintiff's weight is a severe impairment and, if he is able to do so, to explain how this impairment impacts her RFC, if at all.

SO ORDERED this the 19th day September, 2012.

_____
T. Lane Wilson
United States Magistrate Judge